UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MELIDA MARTINEZ,

    Plaintiff,

v.

                                     Case No: 2:17-cv-152-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff Melida Martinez seeks judicial review of the denial of her claims for a period of disability and disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the Joint Memorandum (Doc. 27) and the applicable law. For the reasons set forth herein, the decision of the Commissioner is **REVERSED** and this matter is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four.

### I. Issue on Appeal[1]

Plaintiff raises one issue on appeal: whether the administrative law judge ("ALJ") erred in failing to obtain the assistance of a medical advisor in determining Plaintiff's disability onset date.

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.")

## II. Summary of the ALJ's Decision

On July 30, 2013, Plaintiff filed her application for DIB, alleging her disability began June 1, 2012 due to rheumatoid arthritis, lupus, leukemia and vision problems. Tr. 73, 140-41. Plaintiff's claim for DIB was denied initially on August 16, 2013, and upon reconsideration on September 27, 2013. Tr. 99-101, 104-08. On November 8, 2013, Plaintiff requested a hearing before an ALJ. Tr. 109-110. ALJ William F. Taylor held a hearing on October 21, 2015. Tr. 39. On November 23, 2015, the ALJ found Plaintiff was disabled from September 18, 2015 through the date of the decision. Tr. 22-34.

At step one, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015, and had not engaged in substantial gainful activity since the alleged onset date of June 1, 2012. Tr. 24. At step two, the ALJ found since the alleged onset date Plaintiff had severe impairments of ocular hypertension; rheumatoid arthritis; T-Cell large granular lymphocytic leukemia; diabetes; hypertension; anemia; leukopenia; obesity; and auditory vertigo. *Id.* Next, at step three, the ALJ determined Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Tr. 25. The ALJ determined that prior to September 18, 2015, Plaintiff had the residual functional capacity ("RFC") to perform light work,[2] except:

---

[2] The regulations define light work as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very

with frequent stooping, crouching, kneeling, crawling and balancing; no limits on hearing[,] seeing or speaking; frequent climbing [of] stairs and ramps, no climbing of ladder[s,] ropes or scaffolds; can reach[] bilaterally in all directions including overhead; no limits on fingering, feeling and handling; avoid concentrated exposure to dusts, fumes, odors, gases, smoke, irritating inhalants and areas of poor ventilation; avoid concentrated exposure to vibrations; no limits on the use of hands and feet for the operation of controls; avoid concentrated exposure to extreme heat and cold; can work at heights and near bodies of water when protected from falls; and avoid working with or near dangerous and moving type of equipment or machinery.

Tr. 25-26. The ALJ found beginning on September 18, 2015, Plaintiff had the RFC to perform sedentary work[3] except:

> with occasionally stooping, crouching, kneeling, and balancing but no crawling; no limits on hearing[,] seeing or speaking; occasionally climbing stairs and ramps, no climbing of ladder[s,] ropes or scaffolds; occasionally reaching bilaterally in all directions including overhead; occasionally fingering, feeling and handling with left non-dominate hand and less than occasionally with the right dominate hand; avoiding concentrated exposure to vibrations; occasional use of hands and feet for the operation of controls; avoiding concentrated exposure to extreme

---

little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[3] The regulations define sedentary work as work that involves:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

heat and cold; can work at heights and near bodies of water when protected from falls, and avoid working with or near dangerous and moving type of equipment or machinery. Additionally, can perform simple routine repetitive job tasks; understand, remember and carryout job instructions related to simple routine repetitive job duties; accept supervision, frequently interact with co-workers and interact with the general public; maintain attention concentration and pace if allowed scheduled work breaks of 15 minutes in the first half of the workday, 15 minutes in the second half of the workday and 30 minutes midday; can be punctual and work within a set schedule; requires no special supervision to complete work assignments pertaining to simple routine repetitive job tasks; can make work related decisions regarding simple routine and repetitive job assignments; can adapt to changes in job duties and work assignments if the changes are infrequent and gradually introduced; and should have no fast paced quota driven factory production type of work assignments.

Tr. 32.

At step four, the ALJ determined that prior to September 18, 2015, Plaintiff was able to perform past relevant work in "alterations/tailor[ing,]" but since September 18, 2015, Plaintiff has not been able to perform past relevant work. Tr. 33. Finally, at step five, the ALJ determined there were no jobs existing in significant numbers in the national economy that Plaintiff could perform. Tr. 34. Thus, the ALJ concluded Plaintiff was not disabled prior to September 18, 2015, but she became disabled on that date and was disabled from September 18, 2015 through the date of the decision. *Id.* The Appeals Council denied Plaintiff's request for review on January 13, 2017, and Plaintiff subsequently filed a Complaint with this Court. Tr. 1, 5; Doc. 1. Both parties have consented to the jurisdiction of the United States Magistrate Judge. Docs. 15, 18. The matter is now ripe for review.

### III. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

"In determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV. Discussion

The primary issue in this case is when Plaintiff became disabled, i.e., when was her disability onset date, and whether the ALJ properly determined her onset date without consulting a medical advisor. "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (citation omitted). Social Security Rulings are not binding on the Court, but are given "great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance." *Id.* (citation omitted). In determining a claimant's disability onset date, an ALJ must follow the procedures set forth in Social Security Ruling ("SSR") 83-20. 1983 WL 31249 (Jan. 1, 1983). If the claimant's disability is of nontraumatic origin, the ALJ should consider the claimant's "allegations, work history, if any, and the medical and other evidence concerning impairment severity." *Id.* at *2. In cases of slowly progressive impairments, as in this case, SSR 83-20 provides:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

*Id.* If the disability onset date must be inferred, SSR 83-20 states:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination,

> e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

*Id.* at *3.

The Eleventh Circuit has not addressed SSR 83-20 in a published decision. In an unpublished decision, the Eleventh Circuit has stated SSR 83-20 is applicable only where the ALJ has made a finding of disability "and it is then necessary to determine when the disability began." *Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 939 (11th Cir. 2014) (citation omitted); *cf. Rojas v. Comm'r of Soc. Sec.*, No. 2:11-cv-124-FtM-MRM, 2017 WL 2130078, at *10-11 (M.D. Fla. May 17, 2017) (applying SSR 83-20 where ALJ made no finding of disability, but there was "strong evidence that [the plaintiff] became disabled at some time").

"[C]ourts have generally interpreted SSR 83-20 to require that an ALJ obtain the opinion of a medical expert when the medical evidence is either inadequate or ambiguous as to the specific date of onset." *Powell v. Astrue*, No. 7:11-CV-105 (HL), 2013 WL 752961, at *4 (M.D. Ga. Jan. 29, 2013) (quoting *Nixon v. Astrue*, No. 1:11-CV-2032-JSA, 2012 WL 5507310, at *4 (N.D. Ga. Nov. 14, 2012)); *see also Volley v. Astrue*, No. 1:07-CV-0138-AJB, 2008 WL 822192, at *12 (N.D. Ga. Mar. 24, 2008); *McManus v. Barnhart*, No. 5:04-CV-67-OO-GRJ, 2004 WL 3316303, at *6 (M.D. Fla. Dec. 14, 2004) ("[T]he most logical interpretation of SSR 83-20 is to apply it to

situations where the ALJ is called upon to make a retroactive inference regarding disability involving a slowly progressive impairment, and the medical evidence during the insured period is inadequate or ambiguous").

Here, the ALJ found that since the alleged onset date of June 1, 2012, Plaintiff had severe impairments of "ocular hypertension, rheumatoid arthritis, T-Cell large granular lymphocytic leukemia asymptomatic, diabetes, hypertension, anemia, leukopenia, obesity, and auditory vertigo," and those impairments "cause[d]" significant limitation in her ability to perform basic work-related activities." Tr. 24-25. The ALJ found that beginning September 18, 2015, Plaintiff had each of the severe impairments listed above plus "memory problems[.]" Tr. 25. The ALJ explained that Plaintiff's "first negative report showing disabling problems" was on September 18, 2015, whereas prior treatment notes indicated Plaintiff was doing well with mild physical and mental symptoms. *Id.* (citing Tr. 320, 326-27, 356, 380, 384).

The ALJ identified various representations Plaintiff made about her work and the worsening of her symptoms in her Social Security documents, testimony and treatment records. *See* Tr. 25-26. The ALJ noted that in Plaintiff's initial application for DIB she "reported that she stopped working June 1, 2010, because of conditions of rheumatoid arthritis, lupus, leukemia and vision problems," and on August 6, 2013, she reported in a Supplemental Pain Questionnaire "problems with activities of daily living and getting help from her kids." Tr. 26. The ALJ referenced Plaintiff's testimony that she last worked in 2011 or 2012, that she has had rheumatoid arthritis for "some time" but it became worse in 2015, and that the

arthritis "affects her right side and she can barely move." Tr. 27. The ALJ also noted Plaintiff's apparently contradictory medical records indicating Plaintiff reported working full-time on October 28, 2014, but the ALJ found that Plaintiff's work after the alleged onset date "did not rise to the level of substantial gainful activity." Tr. 24.

The ALJ also thoroughly reviewed and discussed the medical evidence in the record, including treatment notes and reports from Plaintiff's various treating physicians from November 30, 2011 through October 13, 2015. *See* Tr. 28-33. The ALJ noted that through much of 2013 Plaintiff managed her physical impairments reasonably well, although at several points her pain and discomfort increased, and that from 2014 to 2015 her physical and mental impairments generally worsened. *See* Tr. 28-30. The ALJ emphasized Plaintiff's visit with rheumatologist Dana Trotter, M.D., on September 18, 2015, when Dr. Trotter reported Plaintiff's physical and mental conditions had significantly deteriorated. Tr. 31-33. The ALJ found Plaintiff was disabled but rejected Plaintiff's alleged onset date of June 1, 2012, instead finding her onset date of disability was September 18, 2015, the date of Dr. Trotter's examination. Tr. 34; *see also* Tr. 378-82.

Plaintiff argues the ALJ erred in failing to consult with a medical advisor in determining Plaintiff's onset date of disability under SSR 83-20. Doc. 27 at 9. Plaintiff points out the ALJ found from June 1, 2012 through September 17, 2015, Plaintiff had no limitations with reaching bilaterally in all directions; no limitations with fingering, feeling and handling; and no mental limitations; but as of September

18, 2015, Plaintiff only occasionally could reach bilaterally and finger, feel, and handle, and she was limited to simple, routine, repetitive work-related tasks. *Id.* at 12-13. Plaintiff also refers to the September 18, 2015 visit with Dr. Trotter, asserting "it is illogical to conclude that absent evidence of trauma, on September 17, 2015, the Plaintiff had no limitations with reaching with her right upper extremity and no limitations with handling, fingering, or feeling with either hand, but one day later, when examined by Dr. Trotter, she had marked manipulative limitations." *Id.* at 14 (citing Tr. 378). Further, Plaintiff argues, "[t]he facts in this case precisely fit the criteria contemplated under" SSR 83-20, and if the ALJ sought the assistance of a medical advisor, "[t]here is a reasonable probability" the advisor would infer Plaintiff was disabled prior to September 18, 2015. *Id.*

The Commissioner responds the ALJ complied with SSR 83-20 and was not required to consult with a medical advisor to determine Plaintiff's onset date. *Id.* at 14-15. The Commissioner asserts the ALJ did not need to infer the disability onset date because "[t]he alleged onset date was not remote and the medical records were unambiguous," and thus "[t]he ALJ was able to ascertain a precise onset date." *Id.* at 16. Further, the Commissioner states "the medical evidence unambiguously revealed a marked worsening in Plaintiff's physical condition on September 18, 2015, and that that worsening rendered her disabled on that date." *Id.* at 17. The Commissioner argues that prior to September 18, 2015, Plaintiff had no difficulty moving her joints, restriction in her range of motion or inflammation, and she was in "good health overall" as recently as August 2015. *Id.* The Commissioner also

asserts September 18, 2015 is unambiguously the date when Plaintiff's mental condition became disabling. *Id.* at 18. The Commissioner contends treatment records from that day "show a dramatic deterioration in Plaintiff's mental functioning," and September 18, 2015 "is the first observation by a medical professional of memory problems and confusion." *Id.* The Court finds the ALJ erred in failing to consult with a medical advisor to determine the onset date of disability.

The available medical evidence in the record includes treatment records and reports from Plaintiff's doctors ranging from November 2011 to October 2015. *See* Tr. 238, 243, 302-04, 308, 313-15, 318, 356, 378, 384-91. Treatment records from 2011 show Plaintiff's physical impairments were relatively manageable. *See* Tr. 243. For example, on November 30, 2011, oncologist Martin Nicolau, M.D.,[4] of Florida Cancer Specialists reported Plaintiff suffered from rheumatoid arthritis, chronic mild leukopenia and T-cell large granular lymphocytic leukemia, but noted she was "doing quite well" with managing her arthritis. *Id.*

Plaintiff's medical records from 2012 show her physical impairments were generally stable. *See* Tr. 232-33, 275, 288. In August 2012, treatment notes from Trail Health Center state that Plaintiff suffered from leukemia, hypertension and rheumatoid arthritis, and that the leukemia and rheumatoid arthritis were stable.

---

[4] Dr. Nicolau apparently treated Plaintiff from June 20, 2007 through at least August 12, 2015, but the only available records were from the years 2011 through 2015. *See* Tr. 304.

Tr. 275, 288. In November 2012, ophthalmologist David Tran, M.D., noted Plaintiff suffered from ocular hypertension and incipient cataracts. Tr. 232-33.

The medical records from 2013, however, show Plaintiff's rheumatoid arthritis increasing in severity. *See* Tr. 238, 315, 318. In July 2013, Dr. Nicolau noted Plaintiff was in reasonably good health overall despite her chronic leukopenia, but the arthritis in her right shoulder and ankle was exacerbated and she complained of increasing pain in her extremities and swelling in her ankle. Tr. 238. In September 2013, rheumatologist Eric Jay Hochman, M.D.,[5] noted Plaintiff had pain and swelling throughout her body, exhibited "[d]istress with movement due to pain[,]" tenderness at her wrists that appeared to be swollen, and pain with range of motion of her shoulders, although she moved all extremities without difficulty. Tr. 318-19. In December 2013, Dr. Hochman noted Plaintiff had pain in her hands, tenderness and swelling in her wrists, and pain with range of motion in her shoulders and knees. Tr. 315-17.

Plaintiff's records from 2014 show her physical impairments improving and deteriorating at different points, and they show her mental impairments worsening. *See* Tr. 308, 314, 356, 378. In February 2014, Dr. Hochman noted Plaintiff was "doing better," but her arthritis was still active. Tr. 314. In July 2014, Dr. Nicolau noted Plaintiff "subjectively . . . [had] been doing reasonably well[,]" but she did report dizziness, a "decline in her general memory over the last several years[,]" and pain in

---

[5] Dr. Hochman had previously treated Plaintiff "many years ago" and noted he last examined her in 2008 for a connective tissue disease. Tr. 318.

her right leg. Tr. 308. Dr. Nicolau referred Plaintiff to neurologist Michael Vickers, M.D., and in August 2014, Dr. Vickers noted Plaintiff experienced dizziness and "mild problems with short-term memory." Tr. 356. In October 2014, Dr. Hochman reported Plaintiff still had scattered pain but felt her symptoms were tolerable, and Dr. Vickers noted Plaintiff's dizziness had decreased. Tr. 326, 353.

Records from 2015 show Plaintiff's physical and mental impairments worsening. *See* Tr. 302, 378, 384-91. In August 2015, Dr. Nicolau referred Plaintiff to Dr. Trotter, and she examined Plaintiff on September 18, 2015. Tr. 302, 378. Dr. Trotter noted Plaintiff was a "very poor historian" (i.e., exhibited poor memory skills) and her physical examination revealed "restricted cervical spine motion[,]" stiff shoulders and hips, tenderness of hands and wrists, difficulty moving right shoulder, and tenderness of knees. Tr. 378-82. In October 2015, psychologist Steven Saldukas, Ph.D., diagnosed Plaintiff with "mild memory disturbance" and found Plaintiff had "undergone overall moderate cognitive decline" with severe decline in long-term memory of factual information and complex word finding, speed of thinking and multi-tasking. Tr. 384-91.

The Court finds the ALJ erred in failing to consult with a medical advisor to determine the onset date of Plaintiff's disability. As another court in this district has explained, an ALJ is required to obtain the assistance of a medical advisor to determine the onset date of disability under SSR 83-20 "if: (1) the claimant suffers from a slowly progressing impairment(s) of nontraumatic origin; (2) there is strong evidence the claimant became disabled at some time; and (3) the evidence during the

relevant period is inadequate or ambiguous." *Rojas*, 2017 WL 2130078, at *10. Here, the Court finds all three of those criteria are met. First, the record in this case supports the conclusion that Plaintiff's impairments are slowly progressing and of nontraumatic origin. Plaintiff was seeing multiple doctors from at least 2007 through the ALJ's determined onset date of September 18, 2015. *See* Tr. 238, 243, 302-04, 308, 313-15, 318, 356, 378, 384-91. Further, the ALJ found Plaintiff suffered from severe impairments of "ocular hypertension, rheumatoid arthritis, T-Cell large granular lymphocytic leukemia asymptomatic, diabetes, hypertension, anemia, leukopenia, obesity, and auditory vertigo" since at least June 1, 2012, and those impairments "cause[d] significant limitation in her ability to perform basic work-related activities." Tr. 24-25. Further, contrary to the Commissioner's contention, Plaintiff began seeing neurologists and complaining of mental impairments as early as 2014. *See* Tr. 356. There also is no evidence of a trauma-inducing event causing Plaintiff's disability in the record.

Second, there is strong evidence in the record Plaintiff became disabled at some point. The ALJ found Plaintiff became disabled as of September 18, 2015 and had multiple severe impairments since at least June 1, 2012. Tr. 24-25. Further, there is medical evidence documenting Plaintiff's increasing severity of symptoms of the conditions listed above and testimony from Plaintiff regarding how her conditions have rendered her disabled. *See* Tr. 41-66, 238, 243, 302-04, 308, 313-15, 318, 356, 378, 384-91. For example, Plaintiff stated her physical impairments significantly

affect her ability to function during the day; she is unable to work; she experiences frequent dizziness; and she has experienced significant memory loss. *See* Tr. 50-58.

Finally, the available medical evidence is inadequate or ambiguous. First, the determining medical report according to the ALJ's opinion is the September 18, 2015 report from Dr. Trotter. Tr. 32. As Plaintiff points out, the ALJ determined September 18, 2015 to be the onset date mostly based on this report and decided Plaintiff's physical and mental abilities changed markedly as of that date. Doc. 27 at 14; Tr. 32. Although Dr. Trotter's report details severe disabling impairments, her report does not state when Plaintiff's condition reached that level of severity. *See* Tr. 378-82; *Volley*, 2008 WL 822192, at *15. Further, the ALJ used the report of Dr. Trotter, a rheumatologist, to conclude Plaintiff's memory loss became disabling on the date of that examination. Tr. 32; *see* Tr. 378-82. There are also no available records from Dr. Hochman from 2007 to 2012. Tr. 24. Finally, Plaintiff's severe impairments are several and varied, and thus the need for a medical advisor here is significant, to determine when the combination of these impairments became medically disabling. *See McManus*, 2004 WL 3316303, at *3; *see also Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995) ("[T]he date on which the synergy [of the claimant's impairments] reached disabling severity remains an enigma. In the absence of clear evidence documenting the progression of [the claimant's] condition, the ALJ did not have the discretion to forgo consultation with a medical advisor.")

In support of her position, the Commissioner cites to *Caballero v. Comm'r of Soc. Sec.*, No 6:16-cv-1056-Orl-GJK, 2017 WL 1929708 (M.D. Fla. May 10, 2017), and

*Aldridge v. Comm'r of Soc. Sec.*, No. 15-00006-B, 2016 WL 1175268 (S.D. Ala. Mar. 24, 2016). Both cases are inapposite. In *Caballero*, the plaintiff argued the ALJ erred in failing to consult with a medical advisor to determine her disability onset date. 2017 WL 1929708, at *2. The court affirmed the ALJ's finding and rejected the plaintiff's argument. *Id.* at *4. In *Caballero*, unlike here, the plaintiff's impairment was not slowly progressing and was of traumatic origin—she was injured in a motor vehicle accident. *Id.* The ALJ determined her disability onset date to be the date of the accident and used her treating physician's opinion that the accident caused a severe impairment. *Id.* Conversely, in this case Plaintiff's disability is slowly progressing and of nontraumatic origin, and the ALJ chose to infer a disability onset date different from the one Plaintiff identified. *See* SSR 83-20, 1983 WL 31249, at *1; Tr. 238, 243, 302-04, 308, 313-15, 318, 356, 378, 384-91.

In *Aldridge*, the plaintiff argued the ALJ erred in determining an onset date of September 13, 2012 without seeking the assistance of a medical advisor, where the plaintiff's disability was slowly progressing and of nontraumatic origin. 2016 WL 1175268, at *4. The court affirmed the ALJ's finding. *Id.* There, however, the plaintiff's date last insured was December 21, 2010, and the plaintiff was not eligible for DIB at any time after that date. *Id.* Thus, if the ALJ found the plaintiff's onset date did not occur on or before that date, "the precise date that [the plaintiff's] impairments became disabling [would not be] important." *Id.* Here, Plaintiff's date last insured is December 31, 2015. Tr. 154. Unlike in *Aldridge*, here the ALJ's determination of the precise date prior to December 31, 2015 that Plaintiff became

disabled is critical as it will determine the amount of benefits Plaintiff will receive. *See Touchton v. Comm'r of Soc. Sec.*, No. 6:14-cv-709-Orl-TBS, 2015 WL 12859393, at *3 (M.D. Fla. Jul. 13, 2015) (quoting SSR 83-20, 1983 WL 31249, at *1) ("A claimant's onset date can in many cases be 'critical' because 'it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits.'")

## V. Conclusion

The medical evidence in this case is ambiguous and complex enough to require the assistance of an expert in medicine to infer when the "synergy" of Plaintiff's combination of impairments "reached disabling severity." *See Bailey*, 68 F.3d at 79. Thus, the Court finds the ALJ was required to consult with a medical advisor under SSR 83-20. On remand, the ALJ should obtain a medical advisor to assist in determining the onset date of disability. *See Rojas*, 2017 WL 2130078 at *11.

ACCORDINGLY, it is

**ORDERED:**

1. The decision of the Commissioner is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for the Commissioner to:

   a. obtain the assistance of a medical advisor in determining Plaintiff's onset date in light of the medical evidence of record;

   b. make any other determinations consistent with this Opinion and Order or in the interests of justice.

2. The Clerk of Court is directed to enter judgment in favor of Plaintiff, Melida Martinez, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 11th day of September, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record